1  Steven H. Weinstein (086724)
   Spencer Y. Kook (205304)
2  James C. Castle (235551)
   BARGER & WOLEN LLP
3  633 West Fifth Street, 47th Floor
   Los Angeles, California 90071
4  Telephone:  (213) 680-2800
   Facsimile:  (213) 614-7399
5  Emails:   sweinstein@bargerwolen.com
              skook@bargerwolen.com
6             jcastle@bargerwolen.com

7  Attorneys for Defendants

8

9              UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11

12 CITY OF VISALIA,                        )   CASE NO.  1:12-CV-01181-AWI-SMS
                                           )
13            Plaintiff,                    )   **DEFENDANTS' REPLY BRIEF IN**
                                           )   **SUPPORT OF DEFEDANTS'**
14     vs.                                  )   **MOTION TO DISMISS**
                                           )
15 Chartis, Inc., Chartis Aerospace        )   DATE:      August 27, 2012
   Insurance Services, Inc.; Chartis Claims, )  TIME:      1:30 p.m.
16 Inc.; Charter Global Claims Service,     )   CTRM:      2
   Inc.; Chartis Global Services, Inc.;     )   JUDGE:    Hon. Anthony W. Ishii
17 Chartis Insurance Agency, Inc. Chartis   )
   Casualty Company; Chartis Property       )
18 Casualty Company; Chartis Warranty       )   Complaint Filed: May 31, 2012
   Guard, Inc.; National Union Fire         )
19 Insurance Company of Pittsburg, PA;      )
   The Insurance Company of the State of    )
20 Pennsylvania; American Home              )
   Assurance Company; New Hampshire         )
21 Insurance Company; AIU Insurance         )
   Company; Commerce and Industry           )
22 Insurance Company; Illinois National     )
   Company; American International South    )
23 Insurance Company; American              )
   International Visalia Insurance          )
24 Company; Granite State Insurance         )
   Company; Landmark Insurance              )
25 Company; National Union Fire             )
   Insurance Company of Louisiana; and      )
26 DOES 1-50 inclusive.,                    )
                                           )
27            Defendants.                   )
                                           )
28

I:\office60\62083\018\12pleadings\mtd reply vfinal.doc

# TABLE OF CONTENTS

**PAGE**

1.   INTRODUCTION ..................................................................................................1

2.   ARGUMENT........................................................................................................2

    A.   The City's Claims Are Defenses To Its Payment Obligation That Are Subject to the Arbitration Agreements.................................................................................2

        (1)   The City's Claims Concerning California's Unfair Handling Practices Law Are Defenses to Payment in the Arbitration..........................................2

        (2)   The City's Statute of Limitations Defense Is for the Arbitrators and Has No Merit ................................................................................................6

    B.   The City Agreed To Arbitrate Issues Under The 2000 Payment Agreement .................9

        (1)   The City's Challenge to the Validity of the 2000 Payment Agreement Is for the Arbitrators to Decide....................................................................9

        (2)   *The 1999 Payment Agreement Encompasses Both Policies At Issue in the Arbitration, Including the 2000 Renewal Policy.* .................................10

        (3)   The City Is Estopped from Denying Its Obligation to Arbitrate Under the 2000 Payment Agreement. .............................................................12

            (a)   The City Received the Benefit of the 2000 Payment Agreement..............12

            (b)   The City Cites Inapplicable Statutes.........................................14

3.   CONCLUSION...................................................................................................15

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-i-

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Alfa Laval U.S. Treasury Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 11 Civ. 1872 (RJH), 2012 U.S. Dist. LEXIS 9226, at **28 (S.D.N.Y. Jan. 25, 2012) ...................... 14

*American Home Assur. Co. v. Circle L. Roofing, Inc.*, No. 08 Civ. 874, slip op. at 1 (S.D.N.Y. Feb. 15, 2008)........................................................................................................... 4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 106 S. Ct. 1415 (1986) ................................................................................... 13

*Bos Material Handling, Inc. v. Crown Controls Corp.*, 137 Cal. App. 3d 99 (1982).................... 3

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 S. Ct. 1204 (2006).............................. 9

*Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277 (9th Cir. 2009) ............................................................................................... 13

*Dream Theater Inc. v. Dream Theater*, 124 Cal. App. 4th 547 (2004)......................................... 6

*Edens RTS v. National Union Fire. Ins. Co. of Pittsburgh, PA.*, No. 650845/10, Tr. at 8-12, 17-18 (Sup. Ct., N.Y. County Aug. 3, 2010).............................................................................. 4

*EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311 (2007)................................................ 3

*EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.*, 982 A.2d 1194 (N.J. Supr. Ct. App. Div. 2009)........................................................................................................................................ 4

*GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*, No. 1:11-CV-00907 AWT JLT, 2011 U.S. Dist. LEXIS 148424, at **35 (E.D. Cal. Dec. 27, 2011) (Thurston, Mag. J.), *adopted by*, 2012 U.S. Dist. LEXIS 6446 (E.D. Cal. Jan. 19, 2012) (Ishii, D.J.) ................................. 13

*Hopkins & Carley, ALC v. Thomson Elite*, 2011 U.S. Dist. LEXIS 38396, *16-17 (N.D. Cal. 2011)...................................................................................................................................... 3

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 S.Ct. 588 (2002) ................................................ 6

*Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011) ........................................................................... 6

*National Union Fire Ins. Co. of Pittsburgh, PA v. Champps Entm't, Inc.*, No. 04 Civ. 6163, 2004 WL 2884304, at **1, 4 (S.D.N.Y. Dec. 14, 2004)............................................................ 4

*National Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Prof'l Football Ltd. P'ship*, No. 09 Civ. 7490, 2009 WL 4059174, at *5 (S.D.N.Y. Nov. 17, 2009).......................................... 4

*National Union Fire Ins. Co. of Pittsburgh, PA v. LSB Indus., Inc.*, 296 F.3d 940 (10th Cir. 2002)....................................................................................................................................... 8

*Pacific Bldg. Care Inc. v. National Union Fire Ins. Co of Pittsburgh*, No. SACV 10-1812 DOC (Ex), 2011 U.S. Dist. LEXIS 25212, at **3, 5-6 (C.D. Cal. Feb. 23, 2011) ............... 3, 5

*Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 S. Ct. 1801 (1967) ...............................9

*Raytheon Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346 (S.D.N.Y. 2004).........................................................................................................................5

*Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772 U.S. _____ (2010) ................................9, 10

*Wagner Constr. Co. v. Pacific Mech. Corp.*, 41 Cal. 4th 19 (2007) ..............................................7

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

## 1.   **INTRODUCTION**

Defendants respectfully submit this reply memorandum in support of their Motion to Dismiss, or alternatively, Motion to Stay the Action.

It is undisputed that the City executed the 1999 Payment Agreement.  The 1999 Payment Agreement governs the parties' obligations regarding, *inter alia*, National Union's extension of credit to the City and deferment of certain payment obligations, as well as the City's payment obligation for insurance and insurance services.  The insurance subject to the 1999 Payment Agreement are the only two policies at issue in the arbitration between the City and National Union, *i.e.*, two workers compensation insurance policies covering the period June 30, 1999 to June 30, 2000 (the "1999 Policy") and June 30, 2000 to July 15, 2001 (the "2000 Renewal Policy").  Indeed, by its terms, the 1999 Payment Agreement governs renewal polices.  Similarly, the 2000 Payment Agreement governs these same obligations with respect to the 2000 Renewal Policy.  The 1999 Payment Agreement and the 2000 Payment Agreement are collectively referred to as the "Payment Agreements".

The Payment Agreements contain a broad arbitration clause (the "Arbitration Agreement") that is comprised of two subsections.  The first subsection requires arbitration of "any" dispute about "payment due".  The second subsection requires that "[a]ny other dispute arising out of the [Payment] Agreement must be submitted to arbitration."  The Arbitration Agreement also gives the arbitrators "exclusive jurisdiction over the entire matter in dispute, including any questions as to its arbitrability."

The claims the City asserts in this action are disputes and defenses to payment due that should be addressed in the arbitration.[1]  For example, the City's dispute concerning allegations of unfair claims practices are merely a defense to payment in the arbitration.

---

[1]   The arbitration is moving expeditiously.  On July 31, the arbitrators timely appointed an Umpire, and the Panel has scheduled an Organizational Meeting at the mutual convenience of the parties.  [Ferlazzo Decl., ¶ 7.]

Similarly, the City's assertion that the statute of limitations bars National Union's claim for payment is a dispute that should be decided in the arbitration. In any event, the parties' agreements are structured so that premiums are adjusted annually, either to require additional payments from the City or refunds from National Union. Pursuant to the terms of the parties' agreement, the statute of limitation is not triggered until a final premium adjustment becomes due. A final premium adjustment is not due, and thus, the statute of limitations has not run on National Union's claim.

As to the 2000 Payment Agreement, the City acknowledges that it challenges "the 2000 contract as a whole". The United States Supreme Court has repeatedly held that challenges to the contract as a whole, as opposed to the arbitration agreement in particular, are for arbitrators, not courts. Further, the City must arbitrate because the 1999 Payment Agreement covers the full amount at issue in the arbitration. Moreover, the City is estopped from denying its obligation to arbitrate pursuant to the 2000 Payment Agreement because it accepted the benefits of that agreement. Finally, the 2000 Payment Agreement is not an insurance policy and, therefore, California Insurance Code Section 386 provides no support for the City's arguments.

## 2. **ARGUMENT**

### A.    **The City's Claims Are Defenses To Its Payment Obligation That Are Subject to the Arbitration Agreements**

#### (1)    **The City's Claims Concerning California's Unfair Handling Practices Law Are Defenses to Payment in the Arbitration.**

The City contends "[t]his lawsuit is not based on claims of breach of contract. This lawsuit is based on Defendants' violation of California's Unfair Handling Practices law," which it claims gives rise to its two causes of action for breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty. [Opp. p. 1:10-15.] Because it brings tort claims, not a contract claim, the City contends the

Arbitration Agreements do not apply to require arbitration of their claims.

The City is wrong as it misses the point.  Regardless of whether the City asserts contract or tort claims, those claims must be arbitrated if they fall within the scope of the Arbitration Agreements.  One cannot attempt to avoid an arbitration provision from a contract by attempting to cast his or her claim as a tort, as the City attempts to do here.  *See*, *e.g.*, *Hopkins & Carley, ALC v. Thomson Elite*, 2011 U.S. Dist. LEXIS 38396, *16-17 (N.D. Cal. 2011) (agreement to arbitrate "any dispute arising under the Agreement" included all claims "whether based on contract or tort" because they "directly relate[] to the parties' contractual relationship"); *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1330 (2007) (holding agreement to arbitrate dispute "arising from or out of a contract" encompasses tort claims such as fraud in the inducement and negligent misrepresentation); *Bos Material Handling, Inc. v. Crown Controls Corp.*, 137 Cal. App. 3d 99, 105 (1982) ("where contracts provide arbitration for '"any controversy . . . arising out of or relating to the contract . . ."' the courts have held such arbitration agreements sufficiently broad to include tort, as well as contractual, liabilities so long as the tort claims 'have their roots in the relationship between the parties which was created by the contract.'"").

Here, the Arbitration Agreements encompass any dispute over payments owed under the Payment Agreements and "[a]ny other unresolved dispute arising out of this Agreement."  [Smoak Decl., Exhibits 1, 2 (Payment Agreements) at p. 8.]  Applying these or similar provisions in National Union's payment agreements, numerous courts have compelled arbitration or stayed actions in favor of arbitration.  *See Pacific Bldg. Care Inc. v. National Union Fire Ins. Co of Pittsburgh*, No. SACV 10-1812 DOC (Ex), 2011 U.S. Dist. LEXIS 25212, at **3, 5-6 (C.D. Cal. Feb. 23, 2011) (considering payment agreements similar to those at issue here, the court stayed an action alleging violations of California's Unfair Competition Law and noted that resolution of the parties payment disputes in the arbitration "necessarily will involve consideration of [the policyholder's] defenses to non-payment – including the claims

of Defendants' alleged misconduct that form the basis of the instant case"); *National Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Prof'l Football Ltd. P'ship*, No. 09 Civ. 7490, 2009 WL 4059174, at *5 (S.D.N.Y. Nov. 17, 2009) (holding that identical arbitration agreement was "broad" and compelling arbitration of *inter alia* allegations that policyholder was not obligated to pay National Union because National Union failed to determine the validity of claims submitted and failed to protect the policyholder from fraudulent claims"); *EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.*, 982 A.2d 1194, 1199, 1207 (N.J. Supr. Ct. App. Div. 2009)**Error! Bookmark not defined.** (compelling arbitration of allegations that National Union *inter alia* violated anti-trust laws and engaged in unfair business practices in connection with workers' compensation insurance programs); *Edens RTS v. National Union Fire. Ins. Co. of Pittsburgh, PA.,* No. 650845/10, Tr. at 8-12, 17-18 (Sup. Ct., N.Y. County Aug. 3, 2010) (granting National Union's counterclaim to compel arbitration under a similar payment agreement and rejecting the argument that a tort claim is not subject to arbitration).  *See also American Home Assur. Co. v. Circle L. Roofing, Inc.*, No. 08 Civ. 874, slip op. at 1 (S.D.N.Y. Feb. 15, 2008) (compelling arbitration under payment agreement similar to that at issue here); *National Union Fire Ins. Co. of Pittsburgh, PA v. Champps Entm't, Inc.*, No. 04 Civ. 6163, 2004 WL 2884304, at **1, 4 (S.D.N.Y. Dec. 14, 2004) (compelling arbitration of all disputes under a payment agreement similar to that at issue here).

As evidenced by the allegations in the Complaint, this action concerns a dispute over the City's payment obligations and the City's defenses to that payment obligation:

- The City contends Defendants delivered an invoice to the City on or about May 10, 2010 demanding payment of $540,991 relating to claims made under the workers' compensation policies issued to the City during the 1999 to 2001 period.  [Cmplt. ¶ 29.]
- The City contends it was surprised by this invoice because

Defendants allegedly "failed to provide annual reviews, calculations, or notices for the policies during the prior years." [Cmplt. ¶ 30.]

- The City contends the demand for this money is "time- barred" and Defendants' alleged continued demand for payment constitutes breach of the implied covenant of good faith and fair dealing.  [Cmplt. ¶ 42.]

- The City also contends that Defendants negligently adjusted claims, failed to keep Plaintiff apprised of claims that the City were resolving on their behalf, and failed to properly notify the City of any claims for additional premium.  [Cmplt.¶ 33]

- The City claims Defendants "mishandled and settled claims for the sole purpose of increasing revenue to Defendants at the expense of [the City]."  [Cmplt.¶ 33]

Because the City's claims in this action revolve around its dispute over its payment obligations, these claims squarely fall within the scope of the Arbitration Agreements and, therefore, must be resolved by way of arbitration.

Importantly, the Arbitration Agreements further provide that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." [Smoak Decl., Exhibits 1, 2 (Payment Agreements) at 9 (emph. added).]  Applying the same or similar provisions in National Union's payment agreements, courts have consistently compelled arbitration of such threshold disputes concerning the scope of arbitrability.  *See Raytheon Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 356-57 (S.D.N.Y. 2004) (compelling arbitration of dispute over whether issue related to coverage under insurance policies or payment obligation under payment agreement); *Pacific Bldg. Care, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 109058/10, 2010 N.Y. Misc. LEXIS 5373, at *5 (Sup. Ct., N.Y. County Oct. 28, 2010) (compelling

arbitration of whether there was a condition precedent to arbitration).

Not surprisingly, the City's opposition does not address why the arbitration provision should not apply, and that is because it clearly applies here.  Insofar as there is any question over the arbitrability of any claims at issue in this action, both California state and federal courts hold that the issue must be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement that the parties intended that those questions be decided by the arbitrator.  *See Momot v. Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2011) (where parties agree to arbitrate "validity or application" of arbitration agreement, "the parties clearly and unmistakably agreed to arbitrate the question of arbitrability"); *Dream Theater Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553-57 (2004) (agreement that arbitrator shall rule on "objections with respect to the existence, scope or validity of the arbitration agreement" demonstrates "clear and unmistakable" intent "that the arbitrator will decide any dispute over arbitrability").  Here, based on the plain language of the arbitration provision, there is clear and unmistakable evidence that the arbitrators have exclusive jurisdiction over any question of arbitrability.  For this reason, this action should be stayed or dismissed and all claims, including questions of arbitrability, should be referred to arbitration.

### (2)    The City's Statute of Limitations Defense Is for the Arbitrators and Has No Merit

The City asserts that "if a claim is time-barred, the claim cannot arise from the contract because the contract can no longer be enforced – the contract is done." [Opp., p. 3:23-25.]  Putting aside the fact this argument makes no sense, the City's defense that Defendant National Union's demand for payment is time barred is an issue for the arbitrators to decide.

In *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85, 123 S.Ct. 588 (2002), the United States Supreme Court held that whether the claimant asserted their claim within the applicable time limit was presumptively a question for the arbitrators to

1  decide.  Similarly, the California Supreme Court has held that where the parties

2  agreed to arbitrate "any dispute", the statute of limitations is an "affirmative defense"

3  for the arbitrators to decide.  *See Wagner Constr. Co. v. Pacific Mech. Corp.*, 41 Cal.

4  4th 19, 26 (2007).

5       As discussed *supra* Section A(2), the Arbitration Agreement requires

6  arbitration of "any" dispute about payment due, "[a]ny other unresolved dispute" and

7  "any question" about arbitrability.  [Smoak Decl., Exhibits 1, 2 (Payment

8  Agreements) at pp. 8-9.][2]  Accordingly, the City's dispute that the statute of

9  limitations bars National Union's claim for payment is a defense to the payment

10  obligation, and this is for the arbitrators to decide.

11      Thus, the Court should not reach the merits of the statute of limitation issue.

12  Even if the Court were to decide the arbitrability of the City's statute of limitations

13  argument, this payment defense is without merit.  The parties' agreements are

14  structured so that premiums are adjusted annually, either to require additional

15  payments from the City or refunds from National Union.  The express terms of the

16  parties' agreements provide for an annual on-going computation of premium up and

17  down.

18           We have shown the estimated *Final Premium* in the *Schedule*,

19           Section 9, Item C.  We will recalculate the estimated *Final*

20           *Premium* as soon as practicable after the First Valuation Date

21           shown in the *Schedule* Section 5.  We will recalculate the

22           estimated *Final Premium* annually thereafter until you and we

23           agree in writing that no more recalculations will be done or until

24           the Last Valuation Date (if any) is shown in the *Schedule* Section

25           5, whichever comes first.

26           *     *     *

27           Last Loss Valuation Date: until mutually agreed

28  _____

[2]     The parties also agreed to relieve the arbitrators from following the strict rules of law.  [Smoak Decl., Exhibits 1, 2 (Payment Agreements) at 9.]

[Ferlazzo Decl., Exhibits 1-2 (1999 Policy and 2000 Renewal Policy, Large Risk Rating Plan Endorsements) at pp. 2, 5 (italics in original, underline added).]  Thus, the parties' agreement is "structured so that the statute of limitation is not triggered until a final premium adjustment becomes due." *National Union Fire Ins. Co. of Pittsburgh, PA v. LSB Indus., Inc.*, 296 F.3d 940, 941-42 (10th Cir. 2002).

The City and National Union have <u>not</u> "agree[d] in writing that no more reclacualtions will be done."  In fact, the City does not make any such allegation.  Thus, pursuant to the express terms of the parties' agreement, no final premium adjustment has become due, and the statue of limitations has not started to run.

Further, a final premium adjustment could not be issued because there are still open claims under the policies.  Because of the very nature of loss sensitive policies, the amount owed by the policyholder continues to change while claims are open, *See LSB*, 296 F.3d at 942 (noting that loss sensitive policies "contain provisions designed to make premiums paid by [the policyholders] accurately reflect the actual losses experienced by the insurance company.")  Therefore, premium adjustments, up and down, are issued while there are open claims. *See id.*  ("Because insured losses can take years to be finally adjusted, premiums under each retention agreement are adjusted annually").  Until all claims are closed, the premium is only an estimate; the premium does not become final until all claims are closed. *See id.* at 946 ("annual adjustments were simply estimates.")

Here, there are open claims under the policies.  [*See* Ferlazzo Decl., Exhibit 3 (Loss Run for Contract Nos. 461100 and 461101[3]) (showing open claims under both contracts).][4]  Accordingly, the time for National Union to issue a final adjustment has not arrived, and the statue of limitations has not started to run.

_____

[3]     National Union's records refer to the 1999 Payment Agreement as Contract No. 461100 and the 2000 Payment Agreement as Contract No. 461101.  [*See* Smoak Decl., Exhibit 3 (Invoice).]

[4]     There are 3 open claims under the 1999 Policy, and 5 opens claims under the 2000 Renewal Policy.  [Ferlazzo Decl., Exhibit 3 (Loss Run for Contract Nos. 461100 and 461101.]

**B.**     **The City Agreed To Arbitrate Issues Under The 2000 Payment Agreement**

       **(1)**     **The City's Challenge to the Validity of the 2000 Payment Agreement Is for the Arbitrators to Decide.**

The City challenges the 2000 Payment Agreement as a whole. Indeed, the City admits its "position goes to the 2000 contract as a whole". [Opp., p. 7:19-20.] However, the City also incorrectly states "[t]his Court should determine the arbitrability of the 2000 contract by determining if it is a contract at all." [*See id.* at 7:22-24*; see also id.* at 5:6 ("it is not entirely clear that the latter contract [*i.e.*, the 2000 Payment Agreement] exists at all.") It is wrong, because this issue is for the arbitrators. As the U.S. Supreme Court has held, challenges to an agreement as a whole, and not specifically the arbitration clause, are for the arbitrators to decide. *See Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S. Ct. 1801 (1967); *accord Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S. Ct. 1204 (2006) ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.") In fact, citing *Buckeye*, the City admits that "Defenses to the contract as a whole are left to the arbitrators." [Opp., p. 7.] Thus, the City's challenge to the 2000 Payment Agreement "as a whole" is an issue for the arbitrators.

Further, as discussed above, the parties agreed that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." [Smoak Decl., Exhibit 2 (2000 Payment Agreement) at p. 9.] In *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, ___ U.S. ____ (2010), the United States Supreme Court reiterated the long-standing rule that parties may agree to arbitrate threshold or gateway questions, such as the existence or scope of the arbitration agreement:

The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement.  <u>We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate</u> or whether their agreement covers a particular controversy.

*Id.* at 2777 (emphasis added).  Further, in *Rent-A Center*, the Supreme Court held that unless the party opposing arbitration challenged the delegation provision specifically (as opposed to the arbitration agreement as a whole), the court must treat the delegation provision as valid and require the parties to arbitrate the validity of the agreement as whole.  *Id.* at 2779.

Again, the City admits it is challenging the 2000 Payment Agreement as a whole.  [Opp., p. 7:19-20.]  The City does not specifically challenge the agreement to arbitrate arbitrability.  Therefore, whether the City agreed to arbitrate in the 2000 Payment Agreement is for the arbitrators.

(2) ***<u>The 1999 Payment Agreement Encompasses Both Policies At Issue in the Arbitration, Including the 2000 Renewal Policy.</u>***Error! Bookmark not defined.

Regardless of whether the 2000 Payment Agreement is unsigned, the City must arbitrate because the 1999 Payment Agreement covers the full amount at issue in the arbitration.

There is no dispute that the City executed the 1999 Payment Agreement. [Opp., p. 2:23-25.]  The 1999 Payment Agreement provides *inter alia*:

> ***We* have agreed** to the following:
>
> - to provide *you* insurance and services according to the *Policies* and other agreements; and
> - <u>to extend credit to *you* by deferring our demand for full payment of the entire amount of *Your Payment Obligation*</u>

if you make payments according to this Agreement.

To induce us to agree as above,

*You* **have agreed** to the following:

- to pay us all *Your Payment Obligation* and to perform all *your* other obligations according to this Agreement and *Schedule* for all entities covered by the *Policies*;

- to provide us with collateral according to this Agreement and *Schedule*; [Smoak Decl., Exhibit 1 (1999 Payment Agreement) at p. 3 (bold and italics in original, underline added).]

The 1999 Payment Agreement defines "Your Payment Obligation" as *inter alia*:

> **"Your Payment Obligation"** means the amounts that you must pay us for the insurance services in accordance with the terms of the *Policies*, this Agreement, and any similar primary casualty insurance policies and agreements with us incurred before the inception date hereof.  [Smoak Decl., Exhibit 1 (1999 Payment Agreement) p. 4 (bold an italics in original, underline added).]

The 1999 Payment Agreement defines "Policies" as the policy listed in the schedule and any renewals of that policy.

> **"Policy"** or **"Policies"** means . . . any of the insurance policies described by their policy number in the *Schedule*, and their replacements and renewals.  [Smoak Decl., Exhibit 1 (1999 Payment Agreement) p. 3 (bold and italics in original, underline added).]

The schedule to the 1999 Payment Agreement lists policy no. WC 347-62-65, *i.e.*, the 1999 Policy.[5]  The renewal of the 1999 Policy is the 2000 Renewal Policy.

---

[5]    [*See* Smoak Decl., Exhibit 1 (1999 Payment Agreement, Schedule of Policies

Indeed, the Policy Information Page for the 2000 Renewal Policy confirms it is a renewal of the 1999 Policy:

> PREVIOUS POLICY NUMBER
>
> RENEWAL            003476265

[*See* Ferlazzo Decl., Exhibit 2 (2000 Renewal Policy, Workers Compensation and Employers Liability Policy Information Page).][6] Thus, the "Policies" subject to the 1999 Payment Agreement are both the 1999 Policy and the 2000 Renewal Policy. Therefore, the City's payment obligations for the 1999 Policy and the 2000 Renewal Policy are subject to the 1999 Payment Agreement, including the arbitration agreement therein.

In the arbitration, National Union seeks payments due from the City for both the 1999 Policy and the 2000 Renewal Policy.  [*See* Smoak Decl., Exhibit 3.] Accordingly, the entire amount demanded by National Union in the arbitration, and the City's defenses to payment, are subject to the arbitration agreement in the 1999 Payment Agreement.

### (3)      The City Is Estopped from Denying Its Obligation to Arbitrate Under the 2000 Payment Agreement.

#### (a)      The City Received the Benefit of the 2000 Payment Agreement.

Moreover, the City is estopped from denying its obligation to arbitrate pursuant to the 2000 Payment Agreement because it accepted the benefits of that agreement.

As the City acknowledges, "neither California law nor the FAA requires an authorized signature from the City to bind it to the 2000 contract's terms".  [Opp., p.

---

and Payments) at p. 2.]

[6]      National Union repeatedly asked the City five times over four months whether it denied that the 2000 Renewal Policy was a renewal of the 1999 Policy.  [Ferlazzo Decl., ¶ 8.]  The City never denied that the 2000 Renewal Policy was a renewal of the 1999 Policy.  [*Id.*]

7:6-7.][7]   This Court's recent decision in *GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*, confirms this proposition.  In *GAR Energy*, the Court adopted the magistrate judge's report and recommendation that non-signatories were required to arbitrate because they allegedly took advantage of the benefits of a contract that included an agreement to arbitrate.  *See GAR Energy & Assocs., Inc. v. Ivanhoe Energy Inc.*, No. 1:11-CV-00907 AWT JLT, 2011 U.S. Dist. LEXIS 148424, at **35-36 (E.D. Cal. Dec. 27, 2011) (Thurston, Mag. J.), *adopted by*, 2012 U.S. Dist. LEXIS 6446 (E.D. Cal. Jan. 19, 2012) (Ishii, D.J.).

The 2000 Payment Agreement governs the parties' obligations regarding, *inter alia*, National Union's extension of credit to the City, and deferral of the City's payment obligations, with respect to the 2000 Renewal Policy.  [*See* Smoak Decl., Exhibit 2 (2000 Payment Agreement) at p. 3 (setting forth what the parties agreed and defining "Policies" as *inter alia* "any of the insurance policies described by their policy numbers in the Schedule"); Smoak Decl., Exhibit 2 (2000 Payment Agreement, Schedule of Policies and Payments) at p. 2 (listing the 2000 Renewal Policy).]

The City received insurance coverage under the 2000 Renewal Policy that was also subject to the 2000 Payment Agreement.  [*See* Ferlazzo Decl., Exhibit 3 (Loss Run for Contract No. 461101, showing that as of January 31, 2010, National Union had incurred approximately $1.4 million for claims under the 2000 Renewal Policy.] Pursuant to terms of the 2000 Payment Agreement, the City received the benefit National Union's extension of credit and deferment of the City's payment obligations

---

[7]     The City takes issue with National Union's citation to *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415 (1986).  National Union cited that case for the proposition "that where the contract contains an arbitration clause, there is a presumption of arbitrability" and any doubts are resolved in favor of arbitration.  The City's issue is that  *AT&T* concerns a labor agreement.  [Opp., pp. 6:27-7:2.]  But, the proposition at issue is well established with respect to agreements to arbitrate commercial disputes subject to the FAA.  *See Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (in deciding scope and validity of arbitration agreement subject to the FAA, the court noted "It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" (quoting *AT&T*, 475 U.S. at 643)).

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  in connection with the 2000 Renewal Policy.

2        Specifically, National Union deferred the City's payment of $311,618 that

3  National Union estimated for losses at the inception of 2000 Payment Agreement.

4  [Smoak Decl. Exhibit 2 (2000 Payment Agreement, Schedule of Policies and

5  Payments) at p. 2.]  In essence, the City received an interest free loan from National

6  Union for this deferred amount.

7        Further, the City previously acknowledged it was bound by the 2000 Payment

8  Agreement.  Specifically, in November 2002, National union submitted an invoice to

9  the City showing the City owed $368,050 under both the 1999 Payment Agreement

10  and the 2000 Payment Agreement.  [*See* Kessel Decl., ¶ 2 and Exhibit 1.]  In 2003,

11  the City paid that invoice.  [*See* Kessel Decl., ¶ 3 and Exhibit 2.]

12        The City cannot cherry pick provisions of the 2000 Payment Agreement that

13  apply.  It cannot accept the benefit of the extension of credit and deferral of its

14  payment obligation in the 2000 Payment Agreement, but avoid the arbitration

15  agreement.  Based on the foregoing, the City is estopped from denying its obligation

16  to arbitrate under the terms of the arbitration agreement in the 2000 Payment

17  Agreement.  *See Alfa Laval U.S. Treasury Inc. v. National Union Fire Ins. Co. of*

18  *Pittsburgh, PA*, No. 11 Civ. 1872 (RJH), 2012 U.S. Dist. LEXIS 9226, at **28-29

19  (S.D.N.Y. Jan. 25, 2012) (enforcing arbitration under a similar National Union

20  agreement, noting "the non-signatory plaintiffs have received a direct benefit from

21  the Indemnity Agreements and are estopped from denying their obligation to arbitrate

22  as the Agreements require.")

23                  (b)      **The City Cites Inapplicable Statutes.**

24        The City cites California Insurance Code section 386 in its opposition in an

25  attempt to establish that the 2000 Payment Agreement is unenforceable because it

26  was unsigned.  Section 386 is inapplicable as that section only applies to signatures

27

28  _____

on insurance policies.[8]  The Payment Agreement is not an insurance policy and, therefore, Section 386 provides no support for the City's arguments in any way.  For the reasons discussed above, the City is bound by the arbitration provisions in the Payment Agreements for all time periods raised in the City's Complaint.

### 3.   CONCLUSION

For the reasons set forth in the motion and here, Defendants respectfully request that the Court find that arbitration provision applies and dismiss Plaintiff's claims, or in the alternative, stay the action until arbitration is completed.

Dated:  August 20, 2012                    BARGER & WOLEN LLP

Of Counsel:

Evan L. Smoak                          By:   /s/
Matthew C. Ferlazzo                          STEVEN H. WEINSTEIN
BARGER & WOLEN LLP                           SPENCER Y. KOOK
10 E. 40th Street                            JAMES C. CASTLE
40th Floor                                   Attorneys for Defendants
New York, New York 10106
(212) 557-2800

---

[8] Section 386 provides in whole:  "All policies issued by incorporated insurers shall be subscribed by the president or vice president, or chairman, or chief executive officer, or, in case of the death, absence, or disability of those officers, by any two of the directors, and countersigned by the secretary of the corporation. All such policies are as binding and obligatory upon the corporation as if executed over the corporate seal."  The policies were subscribed in accordance with the foregoing section. [*See* Ferlazzo Decl., Exhibits 1-2.]